**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ~~_____~~ 1:20-cv-03399

LEWIS JONES; and

BRECKEN JONES; and

KJ, a Minor,
BY AND THROUGH PARENTS
LEWIS AND BRECKEN JONES
AS NEXT FRIENDS; and

RJ, a Minor,
BY AND THROUGH PARENTS
LEWIS AND BRECKEN JONES
AS NEXT FRIENDS; and

NJ, a Minor,
BY AND THROUGH PARENTS
LEWIS AND BRECKEN JONES
AS NEXT FRIENDS; and

   **Plaintiffs,**

v.

BOULDER VALLEY SCHOOL DISTRICT RE-2, Boulder, Colorado;

   **Defendant.**

---

**AMENDED COMPLAINT FOR MONEY DAMAGES**

---

**I.  PRELIMINARY ALLEGATIONS**

1.  This is a civil rights action ~~under~~ for money damages pursuant to 42 U.S.C. §1983

and based upon violations of the First and Fourteenth Amendments to the United States

1

Constitution, brought to remedy a violation of constitutional rights of the Plaintiffs, who were students and parents in Defendant Boulder Valley School District RE-2 ("BVSD").

2.     Superior Elementary School ("SES") is in the Town of Superior, Colorado and is a school within, and under the authority of, Defendant BVSD.

3.     SES is a kindergarten-5th grade school.

4.     Jenn Bedford ("Bedford") was, during the relevant period, the Principal at SES, and she remains employed with BVSD at a different elementary school.

5.     As SES principal, Bedford carried out policies, practices, and decisions on behalf of BVSD. Ex. 1, Ex. 2.

6.     This is not a *respondeat superior* case.

7.     On November 16, 2018 Plaintiffs received an email from Bedford indicating that BVSD planned certain transgender programming for November 30, 2018 related to the BVSD health education and human sexuality education. The programming was to include three "Queer Kids Stuff" YouTube videos, the performance by a transgender choir of a transgender-themed musical called "Raven's True Self", and classroom discussion on human sexuality, including transgender issues. Ex. 1.".

8.     The musical was to be preceded with Two of the three YouTube videos, two of which that were planned for showingin conjunction with the health/human sexuality education programming were going to be shown to kindergarten through fifth grade students, and the third of which was designated for second through fifth grade students. It was not stated in the email on what day(s) the videos would be shown. The email provided internet links to the videos. A classroom lesson led by each classroom teacher on the gender fluidity spectrum and gender roles definitions was to occur the same day. *Id.*

9.      On November 18, 2018, Plaintiff parents received a second email from Bedford that was apparently in response to negative parental reactions and media coverage generated by her email of November 16, 2018. Ex. 26.

10.     Between November 16 and November 19, 2018, Plaintiff parents viewed the videos and noted that theythe videos' messages are decidedly intolerant of views such as Plaintiffs' religious views. The videos are replete with negative value judgments of persons with differing opinions to those espoused in the videos. In particular, the videos label opposing views as "mean" and "confused," and they assert that someday people who hold differing views, as do Plaintiffs based on their religion, "will know better."

11.     Based upon their sincerely held religious beliefs, Plaintiff parents determined to opt their students out of all the transgender programming.

12.     On November 19, 2018, Plaintiff parents sent an email to Bedford explaining their concerns, including that the decision to present transgender programming, as well as the opinions expressed in the programming videos, were intolerant, divisive, and in direct opposition to their religious views.

13.     On November 26, 2018, Bedford responded by email to Plaintiff parents, telling them that they could opt out of only one component of the transgender programming—namely the musical, "Raven's True Self." Ex. 7.

14.     What Plaintiff parents also learned around November 26, 2018 is that classroom discussions were planned whereby teachers would reinforce the objectionable messages of the videos and the play.

14.15.  On November 27, 2018, Bedford emailed Plaintiff parents to inform them of an upcoming email to include a link for all parents to opt their children out of the performance of "Raven's True Self." Ex. 7.

> **Formatted:** Justified, Indent: First line:  0.5"

15.16.  While SES provided an online opt-out form for "Raven's True Self." An opt-out was not offered or provided for the objectionable videos, or the associated classroom lessons. Ex. 8.

16.17.  On November 27, 2018, Plaintiff parents, in the hope of preserving their and their children's free exercise rights and their right to raise their children as they see fit, filed a formal, confidential complaint, known as an "AC-E2" complaint, with BVSD pursuant to official BVSD policies. Plaintiffs' complaint was based on religious discrimination. Ex. 4.

17.18.  On Thursday and Friday, November 29 and 30, 2018, Plaintiff parents kept their SES children home from school because of their religious objection to the material that would be presented both in videos and in the musical.

18.19.  On Sunday, December 2, Plaintiff parents emailed each of the homeroom teachers of their three SES students to explain their concerns about the transgender programming, to request opt-out for each of their students from any transgender material, to request the immediate segregation of their students in the event that transgender issues arise, and to request immediate notification of such a situation.

19.20.  On Monday, December 3, 2018, Bedford emailed Plaintiff parents and Cc'd BVSD Assistant Superintendent, Robbyn Fernandez and BVSD general counsel, Melissa Barber, in response to the emails that Plaintiff parents sent to the homeroom teachers, saying, "[u]nfortunately, we are not able to accommodate your request to proactively opt-out your students from topics that might be offensive to your religious beliefs." Ex. 2.

20. 21.  However, BVSD was already in violation not only of Plaintiffs' First and Fourteenth Amendment rights, but also of BVSD's written policies, including Nondiscrimination, Teaching About Controversial Issues, and Human Sexuality. Ex. 12 at 14-16.

21. 22.  Plaintiffs' November 27, 2018 AC-E2 Complaint was unanswered as of January 6, 2019 when they filed a AC-E2 Amended Complaint to address additional issues. Ex. 9.

22. 23.  BVSD finally responded long after the BVSD deadline to do so, and to this day, BVSD has failed to answer several of the questions/issues raised in Plaintiffs' AC-E2 Complaint and Amended Complaint. In short, BVSD has refused to address some of the issues raised in the Complaints.

23. 24.  Plaintiffs' email was forwarded to Bedford, who responded on behalf of BVSD in an email in which she carbon copied BVSD assistant superintendent, Robbyn Fernandez and BVSD general counsel, Melissa Barber. Bedford's response expressly denied Plaintiffs' request to opt their children out of the problematic material on religious grounds, adding that SES would continue to follow various BVSD policies. Ex. 2.

24. 25.  On November 27, 2018, Plaintiffs filed a formal, confidential "AC-E2" complaint. Ex. 4.

25. 26.  Plaintiffs were also denied their right to free exercise of religion and the right to the care, control, and upbringing of their children as protected under the First and Fourteenth Amendments and as recognized in various court cases to opt their children out of the problematic programming by steps that BVSD took behind the scenes.[1]

---

[1] Under U.S.C.A. Const. Amend. 14, providing that no state shall deprive any person of liberty without due process of law, "liberty" denotes, not merely freedom from bodily restraint, but also the right of the individual to contract to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home, and bring up children, to worship God

26. 27.  In their AC-E2 complaint, Plaintiffs explained that the BVSD plan to teach sexuality information without a parental exclusion request form as required by the BVSD Rights and Responsibilities Handbook ("Handbook") was inappropriate, demonized those whose views differ from the views espoused in the curriculum, and violated their freedom of religion. Ex. 4.

27. 28.  The District issued a partial response to Plaintiffs but substantially failed to respond to the items raised in Plaintiffs' AC-E2 complaint [Ex. 4] and amended AC-E2 complaint. [Ex. 9].

28. 29.  On November 26, 2018, Plaintiffs notified the Principal of Superior Elementary School, Jenn Bedford ("Bedford") that because of their religious beliefs, they wished to opt their elementary school children out of the all transgender and human sexuality programming. Ex. 7.

29. 30.  Defendant School District BVSD policies state that: "Under Colorado law, parents may excuse students from any portion or portions of the School District's comprehensive health education, including human sexuality education." Exs. 12, 13, 14, 15, and 16 Ex. 1.

30. 31.  Under Defendant School District BVSD policies, parents have the right to be informed regarding the content of these units of instruction or courses within the School District's BVSD's comprehensive health education and to exclude their child from any specific portion or portions of the instruction on the grounds that it is contrary to their religious beliefs and teachings or closely held personal beliefs. Exs. 12 at 14, 15 and Exs., 13, 14, 15, and 16 Ex. 1 Policy.

31. 32.  Each school is required to send home information regarding the material to be covered and a parental exclusion request form two weeks prior to the beginning of instruction on comprehensive health education.

---

according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923).

32.33. Defendant SES did not initially send home the required parental exclusion request form but later constructed its form. Neither did SES send an overview of the topics and materials to be presented in the curriculum. Ex. 2.Ex. 2

33.34. The Colorado statutory framework on sex education is called the Colorado Comprehensive Sex Education Act and is codified at C.R.S. §22-1-128 (the "Sex Ed. Act").

34.35. Pursuant to the Sex Ed. Act, teaching on gender roles is part of comprehensive human sexuality education. C.R.S. §22-1-128(1)(a)(II), (b)(III), (2)(c),

36. The District's published materials on health and human sexuality identify gender issues as falling within the opt-out provisions for fifth graders, eighth graders, and high schoolers. Ex. 1 Policy. 16.

35.37. The opt-out provisions are substantially in keeping with the Health Ed. Act and the Sex Ed. Act, and they create an expectation for parents in Defendants' school district that they will be allowed to opt their children out of listed sex and health topics/programming, including for children younger than fifth grade.

36.38. Among the topics listed in Exhibit 1.16 that parents may opt their children out of are: negative influences and myths regarding sexual activity, gender expression and identity, sexual orientation, gender stereotypes, labels and stereotypes regarding gender identity and sexual orientation, healthy relationships, dating, marriage and intimacy.

37.39. Despite this fact, Jennifer Bedford, the principal at Superior Elementary School refused to allow the opt-out for the kindergarten through fifth graders, which Plaintiffs, on religious grounds requested, in the interest of their children at Superior Elementary School children. Ex. 2.

7

38. 40.  In denying Plaintiffs' requested opt-outs, Principal Bedford stated by e-mail, "Unfortunately, we are not able to accommodate your request to proactively opt-out your students from topics that might be offensive to your religious beliefs. We will continue to follow Board policies, including Nondiscrimination, Teaching About Controversial Issues and Teaching About Religion and Religious Issues in the Schools (specifically section A. Neutrality), and Human Sexuality (each of these documents linked in original)." Ex. 2 Email.

> **Formatted:** Font: Not Bold

39. 41.  On November 27, 2018, Plaintiffs filed a formal, confidential "AC-E2" complaint with Defendant BVSD. Ex. 4.

> **Formatted:** Justified, Indent: Left: 0", First line: 0.5"

40. 42.  On January 6, 2019, Plaintiffs supplemented their AC-E2 complaint with additional material. Ex. 9.

41. 43.  Plaintiffs complaint and supplemental complaint were responded to late and incompletely. This demonstrates the disregard that BVSD maintained for Plaintiffs' primary reason for filing the complaint, which they echoed a number of times throughout: religious discrimination and refusal to allow them to control their children's educations. Ex. 4, 9.

42. 44.  Plaintiffs ultimately filed a "KE" appeal of BVSD's denial of their complaint. The BVSD Board of Education refused to even hear their appeal, which amounts to more discrimination. Ex. 28.

45.     At the outset of the April 23, 2019 school board meeting where the issue before the Board was whether it would hear Plaintiffs' appeal, the chairperson School Board President, Tina Marquis, gave an initial instruction to the large standing room only crowd that, "as always, this will be a respectful place in which we can have rich discussions and talk about all of our students and their needs." Even so, audience members were permitted to cheer during the public comment

period when speakers espoused BVSD-aligned views. Hissing and similar audible expressions of disapproval were permitted when Plaintiffs and others sharing their views spoke.

46.     Likewise, attendees including young children at the April 23, 2019 BVSD board meeting were permitted to hold large signs characterizing Plaintiffs' views as hateful and unsafe. Ex. 30.

47.     At no did the school board or superintendent, all of whom had unobstructed views of the large signs, ask attendees with these signs asked to lower their signs. For the entire evening, those signed faced the very board that was about to vote on whether to hear the appeal. *Id*.

48.     Some attendees wore t-shirts suggesting violence to protect transgender children. Ex. 29.

49.     At no time did the school board or superintendent ask attendees to cover t-shirts promoting violence to protect transgender students against the likes of Plaintiffs.

50.     The podium used by community members for public comment bore two 8½" x 11" signs that faced speakers and were visible from across the room. The signs appeared to be made from construction paper. Both had yellow "equals" symbols against a blue background. The symbol is used in support of LGBTQ persons and to demonstrate opposition to anyone with whose views those persons might disagree. Written in one of the yellow "equals" signs was "BVSD Teacher." It seemed to communicate the idea that there are LGBTQ teachers in BVSD and may have been designed to generate additional feelings of sympathy or camaraderie with those teachers and against Plaintiffs. Written in the other were the words, "Equal Rights For All." The message there is that LGBTQ persons do not have equal rights, that this is the fault of people like Plaintiffs, and that opposing people like Plaintiffs is calculated to bring about equal rights for LGBTQ

persons. The signs were permitted to remain for some time before an unknown person took them down.

51.     Superintendent Rob Anderson also commented at the outset of the meeting, saying that BVSD "has long been a leader in the support and celebration of diversity. We are nationally known for our practices and policies that support our LGBTQ community. BVSD stands firm behind our transgender students. There may not be a more vulnerable population in our school district or a group of students who count on us more to protect them. We are proud of our policies and practices that make our transgender students feel welcome and safe." He went on to say that BVSD has "a history of working with parents who have asked us for accommodations and flexibility around programming that conflicts with their beliefs. Where appropriate, we have not judged those beliefs and have worked with those families to accommodate these individual desires." BVSD apparently does not find it "appropriate" to accommodate the religiously-motivated desires of Plaintiffs to simply opt out of transgender programming.

52.     Throughout the public comment portion of the school board meeting, there were audible expressions of approval and disapproval of speakers' messages would not be tolerated.. In what had becomewas emblematic of BVSD discrimination ofagainst Plaintiffs, the BVSD chairperson ignored her own directive to the crowdand Rob Anderson's remarks about mutual respect and allowed attendees to cheer for speakers they liked who share BVSD's views—namely that transgender programming should be part of even elementary education— and to literally hiss at Plaintiffs and other parents who simply and kindly asked that the appeal be heard.

53.     All these circumstances at the April 23, 2019 school board meeting made Plaintiffs feel unwelcome, unsafe, unprotected, disrespected, and discriminated against by BVSD.

54.     Plaintiffs spoke to express their belief that all children should be supported equally.

10

43.

**II.   JURISDICTION AND VENUE**

Formatted: Normal, Justified, No bullets or numbering

44.55.     This action arises under the United States Constitution, particularly the First

Formatted: Justified, Indent: Left: 0", First line: 0.5"

and Fourteenth Amendments; and under federal law, particularly 28 U.S.C. § 2201, 42 U.S.C. §§

1983 and 1988.

45.56.  This Court is vested with original jurisdiction over these federal claims by operation

of 28 U.S.C. §§ 1331 and 1343 based on 42 U.S.C. §1983.

46.     This Court is vested with authority to grant the requested damages by operation of 28

U.S.C. §§ 2201 and 2202, and pursuant to Federal Rule of Civil Procedure 57.

47.57.  This Court is authorized to issue the requested relief pursuant to 42 U.S.C. § 1983

Formatted: Justified, Indent: Left: 0", First line: 0.5"

and Federal Rule of Civil Procedure 65.

48.58.  This Court is authorized to award the requested compensatory damages in an

amount to be proven at trial pursuant to 28 U.S.C. § 1343.

49.59.  This Court is authorized to award attorney fees pursuant to 42 U.S.C. §1988.

50.60.  Venue is proper in the United States District Court for the District of Colorado

Under 28 U.S.C. § 1391(b), in that the events giving rise to the claim occurred within the district.

**III.   IDENTIFICATION OF PLAINTIFFS**

Formatted: Indent: Left: 0", First line: 0"

51.61.  Plaintiffs Lewis Jones, Brecken Jones, who are next friends of      Jones,

Formatted: Justified, Indent: Left: 0", First line: 0.5"

JonesKJ, NJ, and      JonesRJ, are residents of Boulder County, Colorado.

52.62.  Plaintiffs Lewis Jones and Brecken Jones are Christians.

53.63.  Plaintiffs Lewis Jones and Brecken Jones had three children in Superior Elementary

School in Boulder County, Colorado at the time of the events that give rise to this action.

54.64.  Pursuant to their sincerely held religious beliefs, Plaintiffs wished to exclude their elementary school children from programming involving themes of human sexuality and gender issues.

65.    Plaintiffs communicated their religious beliefs and their desire to exclude their children from the human sexuality and gender issues programming to the Principal of SES. Ex. 7.

55.66.  The school violated Plaintiffs' religious liberties and Colorado's statutory protections for parents who wish to opt their children out of programming involving themes of human sexuality and gender issues.

56.67.  Plaintiff parents maintained a practice of reviewing school programming to ensure that they knew what was planned for their children.

**IV.    IDENTIFICATION OF DEFENDANTS**

57.68.  Defendant Boulder Valley School District RE-2, Boulder, Colorado ("BVSD") is a body politic and corporate that may sue and be sued.

58.69.  The District BVSD is organized under the laws of the State of Colorado.

59.70.  Local governmental units, such as school districts, are considered persons to which 42 U.S.C. 1983 applies.[2]

60.71.  The District BVSD is charged with the administration and operation of Superior Elementary School (SES).

61.72.  As a governmental entity, BVSD is charged with overseeing the operation of SES and the enactment and enforcement of BVSD enacts policies, both formal and informal, including those related to the constitutional rights of parents to direct the education and upbringing of their

---

[2] Monell v. Department of Soc. Servs., 436 U.S. 658 (1978).

children and to live according to their religious beliefs, as well as overseeing compliance by BVSD schools with its policies and with state law by its schools.

62.73. BVSD is responsible for its and its schools' decisions regarding permitting statutory opt-outs, as well as. It is responsible for those of its schools, and for denyingthe decision to deny Plaintiffs their constitutional and statutory right to opt their elementary children out of programming that violates their religious beliefs.

63.74. The District is likewise responsible for the implementation and application of its policies on health education and human sexuality education.

64.75. Pursuant to BVSD policies and practice, BVSD has repeatedly and in various ways denied Plaintiffs' fundamental right to direct the education of their children, have denied Plaintiffs the right to exercise their sincerely held religious beliefs, havehas violated BVSD policy in numerous ways beginning with depriving Plaintiffs of their First Amendment free exercise and Fourteenth Amendment due process rights, including by publicizing Plaintiffs' complaint, and have violated BVSD policies by denying Plaintiffs the right to exclude their children from certain health education programming and human sexuality education programming and by refusing to provide advance information about that programming.

## V.     FACTUAL ALLEGATIONS

**BVSD has a *practice* of discriminating against Plaintiffs' religious beliefs and against their parental rights by violating its own policies regarding health education.**

65.76. AlthoughAlthough as of the events that give rise to this Amended Complaint BVSD had official written policies on the presentation of health topics and human sexuality education, its *practice* was to refuse to follow those policies when Plaintiffs (and other parents) indicated a desire

to avail themselves of those policies based on their sincerely- held religious beliefs, which are protected under the First Amendment.

66.77. Bedford stated in an email on November 19, 2018, "We will continue to follow Board policies, including Nondiscrimination, Teaching About Controversial Issues and Teaching About Religion and Religious Issues in the Schools (specifically section A. Neutrality) and Human Sexuality." But that is exactly what BVSD did not do. Ex. 2.

67.78. BVSD adopted policy IGAE (4/13/10) on health education. Some of the topics it includedincludes are: community and environmental health, consumer health, human growth and development, hereditary and developmental conditions, mental and emotional health, family life education, age appropriate instruction on family roles and expectations, child development, and parenting. Ex. 12 IGAE Health Ed.

68.79. Additionally, BVSD adopted policy IGAE-E, which provides that "the goal of health education is to promote physical, intellectual, social, emotional and spiritual well being [sic], not just to prevent disease. A healthy school is one where all students receive consistent messages reinforcing their personal worth, supporting individual and family differences, and emphasizing personal responsibility for health choices." Ex. 15 IGAE-E Health Goals15.

69.80. IGAE-E echoes IGAE (Ex. 12): "Parents/guardians of all students shall be notified in writing prior to student's involvement in a health education course of instruction. The notice to parents/guardians informs the parents that they may exclude their child from a specific portion or portions of the instruction on the grounds that it is contrary to the religious beliefs and teachings... ." Ex. 15 IGAE-E Health Goals15.

70.81. IGAE-E also provides: "Upon request, each school shall give parents/guardians an opportunity to review the materials to be used and participate in a conference with the instructor

14

and principal in order to assist the parent/guardian in determining whether to request an exemption for the student from a specific portion of the planned instruction." Ex. 15 IGAE-E Health Goals15.

71.82.  BVSD produces a form called "Exclusion from Human Sexuality Curriculum" (the "Exclusion Form"). The Exclusion Form begins by explaining that under Colorado law, (parents) may exclude their children from any portion(s) of the BVSD sex ed. curriculum. It goes on to state that parents may exclude their children from any aspect of the health curriculum (even if it does not involve sex ed.) on the grounds that the instruction is contrary to yourthe parent's or the child's or your religious... beliefs. Ex. 16 Exclusion Form.

72.83.  The BVSD "Exclusion Form" sets forth what topics covered in Health Education with fifth graders qualify as sexual health issues. Among those are:

Anatomy of male and female reproductive systems;

Biology of conception to birth;

Puberty - normal human variance;

Personal hygiene practices and health and safety;

-Id.

TheseEx. 16 Exclusion Form.

73.84.  The sexual health issues certainlylisted on the "Exclusion Form" pertain to transgender studentstransgenderism.

85.     The "Exclusion Form" sets forth what topics covered in Health Education with fifth graders qualify as health issues (but not sexuality education issues). Among those are:

Gender stereotypes and body images in the media;

Pro-Social behaviors that reduce violence and bullying;

Id.

15

**Formatted:** Justified, Indent: Left:  0", First line:  0.5"

74.86.  The Health Topics listed on the same "Exclusion Form" apply to transgender issues.

87.     The BVSD "Exclusion Form" sets forth what topics covered in Health Education with eighth graders qualify as health issues (but not sexuality education issues). Among those are:

Gender expression and identity;

Sexual orientation;

Labels and stereotypes regarding gender identity and sexual orientation;

*Id.*

.

88.     The BVSD "Exclusion Form" sets forth what topics covered in Health Education with high schoolers qualify as health issues (but not sexuality education issues). Among those are:

Gender identity;

Sexual orientation;

*Id.*

75.89.  According to the 2018-2019 BVSD Rights and Responsibilities Handbook (the "Handbook"), policy IGAE recognizes that both state statute and policies of BVSD protect the rights of parents of Kindergarten-8th graders to make important decisions about their child's education regarding health, human growth and development and human sexuality. Furthermore, the Handbook affirms parents' right to be informed and to exclude their students from *any* specific portion or portions of the instruction for religious reasons.[3] Ex. 12 Handbook at 14.

---

[3] "Parents have the right to be informed regarding the content of these units of instruction or courses and to exclude their child from any specific portion or portions of the instruction on the grounds that it is contrary to their religious beliefs and teachings... ." Handbook at 14.

16

76.90.  The Handbook further provides that "[e]ach school will send home information regarding the material to be covered and a parental exclusion request form prior to the beginning of instruction." *Id*Ex. 12 Handbook at 14.

77.91.  The Handbook recognizes the same rights for parents of high schoolers. [*Id.*].

78.92.  In view of the BVSD Handbook's reliance on state statute for compliance, it is appropriate to review the protections of Colo. Rev. Stat. § 22-25-106 the Health Education Act (the "Health Act") in determining whether BVSD complied with its own stated policies.

79.93.  Each local comprehensive health education program which is adopted by a school district or board of cooperative services is bound by the Health Act. Colo. Rev. Stat. §22-25-106.

80.94.  Moreover, BVSD has adopted a local comprehensive health education program, and in its Handbook it has affirmatively constrained itself to abide by the Health Act.  Ex. 12 Handbook at 14.

81.95.  Under the Health Act, parents have the right to exempt their children from a specific portion of the program on the grounds that it is contrary to the religious beliefs and teachings of the student or the student's parent or guardian. Colo. Rev. Stat. §22-25-106.(4)(a).

82.96.  Under the Health Act, "The curriculum and materials to be used shall be made available for public inspection at reasonable times and reasonable hours and a public forum to receive public comment upon such curriculum and materials shall be held. Colo. Rev. Stat. §22-25-106.(4)(b)(II).

83.97.  BVSD transgender programming as contemplatedpresented in Queer Kid Stuff Videos and, in the musical, "Raven's True Self"," and in accompanying classroom lessons falls under BVSD health education policy IGAE. Ex. 13.

98.   BVSD representatives, such as Bedford, asserted on various occasions that the transgender programming was for the benefit of transgender students and their acceptance in the SES community. Taking this to be true, the transgender programming certainly fell within the BVSD IGAE policy framework in that it ostensibly addressed community and environmental health, human growth and development, hereditary and developmental conditions, mental and emotional health, family life education, age—appropriate instruction on family roles and expectations, child development, and parenting.

84.

**By presenting gender identity lessons to kindergarten through fifth graders, by not offering opt-outs for all such material, and by avoiding designation of gender identity lessons as sex ed., BVSD has a practice of violating its own policies regarding sex education and, thereby engaging in religious and parental rights discrimination against Plaintiffs.**

85.99.  The District has an official written policy of informing parents that they may opt their children out of certain lessons on human sexuality. ExExs. 12, 14.

100.  However, BVSD does not follow its written policy and instead had a practice of denying opt-outs. Exs. 8, 19.

86.101.  Moreover, "human sexuality shall be a part of the health education curriculum." Ex. 12.

87.102.  Referring to District Policy IGAI (04/13/10), the Handbook states, "Instruction in human sexuality includes information dealing with the growth and development of the human body, human sexuality, and reproduction. Instruction is provided for every student in grades 5-8 and 10-12. The policy and regulation of human sexuality instruction outlines specific

topics and guidelines for teachers and acknowledges the rights of parents." Ex. 12 Handbook at 14.

88.103.    Parental notification and exclusion from within the human growth and development/human sexuality portion of the curriculum is accomplished by use of the health education program Parental Exclusion Request form (IGAE-E or IGAE-E2). Ex. 20.

89.104.    BVSD violated its own policy that "[o]nly District trained and approved staff shall teach the human sexuality curriculum." And "Community-based speakers may be used to enhance the health education curriculum by presenting timely and appropriate information on topics being covered in the learning materials. Such speakers must be approved by the health education coordinator and will be listed in the health teachers' resource guide." Ex. 20.

90.105.    Plaintiffs found no evidence that this policy was followed. It appears that, like so many other BVSD policies, it was disregarded in favor of BVSD's practice of using its policies as façades behind which it could impose its true desiresagenda while running roughshod over Plaintiffs' civil rights.

106.    BVSD violated its policies because of animus against Plaintiffs' religious beliefs.

91.107.    Although this case is not about Colorado law, in assessing whether the gender programming that gives rise to this action is covered by the state statute on human sexuality education (the "Sex Ed. Act") as it existed in 2018, it is instructive to consider whether gender issues fall under the designation of sex ed.

92.108.    The Sex Ed. Act provides that:

The general assembly hereby finds and declares that:

19

(I)     "Colorado youth have a right to receive medically and scientifically accurate information to empower them to make the informed decisions that promote their individual physical and mental health and well-being;

(II)    This right applies to all youth regardless of...sexual orientation or gender expression;"

Colo. Rev. Stat. §22-1-128(1)(a)(II)

~~93.~~109.     The Sex Ed. Act is instructive in that it provides that gender and transgender issues are an integral component of sex education:

(III) The provisions of sexual and reproductive health education that incorporate comprehensive, evidence-based, culturally sensitive, and age-appropriate standards can result in youth delaying sexual activity until they are ready, avoiding unwanted consequences of sexual behavior, learning medically accurate information about their health, and promoting positive youth-friendly messages concerning growth, development, body image, gender roles, and all aspects related to healthy, safe relationships and sexual behavior.

Colo. Rev. Stat. Ann. § 22-1-128(1)(b)(III)

~~94.~~110.     Under the Sex Ed. Act, "'Culturally sensitive' means the integration of knowledge about individuals and groups of people into specific standards, requirements, policies, practices, and attitudes used to increase the quality of services. "Culturally sensitive" includes resources, references, and information that are meaningful to the experiences and needs of communities of color; immigrant communities; lesbian, gay, bisexual, and transgender communities; people who are intersex; people with physical or intellectual disabilities; people who have experienced sexual victimization; and others whose experiences have traditionally been left out of sexual health education, programs, and policies."

20

Colo. Rev. Stat. § 22-1-128(2)(c)

In other words, from a legal standpoint, study of transgender communities and related matters is squarely in the category of human sexuality education.

95.111.        BVSD Board member Richard Garcia concurs, saying in an email that state law requires sex ed. to be taught in aan LGBTQ, gender inclusive way and that parents have "every right" to opt their children out of sex ed. if they wish. Ex. 18.

96.112.        In spite ofDespite the guidance of BVSD written policies and state law on point, BVSD engaged in a surreptitious campaign to subvert Plaintiffs' religious rights and rights to raise their children according to their conscience. In February 2019 a regular electronic BVSD publication to teachers instructed:

"We encourage you to intentionally weave one of the following equity-centered BLM guiding principles into your everyday teaching practice or an upcoming lesson:

- Restorative Justice

- Empathy

- Diversity

- Globalism

- Transgender Affirming

- Queer Affirming

- Intergenerational

- Black Families

Engaging your students and families in these honest conversations will spark critical reflection and ultimately leads to systemic change on educational issues that impact social justice." Ex. 5 at 2.

97.113.     This email informed Plaintiffs that their struggle was even bigger than they previously understood. Indeed, they were facing not only a school district that had abandoned its written policies and aligned itself with AQEA Queer Endeavor, an organization that portrays Plaintiffs and those like them as hateful, judgmental, and intolerant, but they were also up against the Black Lives Matter organization, which has produced a great deal of LGBTQIA+ materials and made it available to school districts and others online.[4]

98.114.     The message violates not only the written BVSD sex ed. policies but reveals that BVSD created a an anti-Christian climate and method of instruction that is designed to elude detection and, thereby, opt-out requirements. For, if BVSD teachers intentionally weave the principles described are woven into the fabric of students' learningtheir everyday teaching practices, the principles might not be so easy to spot as material presented at assemblies or designated "instructional events". If, by design, it is difficult to spot, it will be difficult for parents to opt their children out, which is clearly the BVSD unwritten goal. Ex. 5 at 2.

115.     The intentional weaving of ideology that teaches that people with differing views, like Plaintiffs, are hateful is itself discriminatory. This BVSD practice harmed Plaintiffs.

99.116.     This is just one more way that BVSD, through efforts that violate its own written policies, undercuts families whose religious beliefs are not the same as the beliefs of BVSD.

100.     In an email on April 9, 2019, Bedford told Plaintiffs, ""The only opt out opportunities that will be available are for the instructional events described in Ms. Fernandez's determination.  No other opt out opportunities are available unless otherwise provided in District policy."  -Jennifer Bedford, CC Robbyn Fernandez 4/9/19.

---

[4] https://neaedjustice.org/supporting-lgbtq-youth/ (accessed 11-16-20)

101.117.   This informed Plaintiffs that their concerns were still not being addressed per BVSD written policies and confirmed yet again that the religious discrimination that they had encountered six months earlier was far from over.

102.118.   Because BVSD policies indicate that gender issues are included in the sex ed. curriculum ([Ex. 16 Exclusion Form).] and because BVSD policies point to state statute as governing its sex ed. policies (Ex. 12 at 14.), and because the Sex Ed. Act makes it clear that gender and gender expression issues are a necessary component of sex ed., there can be no doubt that when BVSD presents programming involving gender and gender expression, it is a matter of sex ed.

103.119.   All matters of sex ed. are also matters of health ed. because of how BVSD categorizes sex ed. Ex. 12 at pg. 14, Ex. 14.

104.120.   BVSD teachers who present sex ed. information are required to "consult with the building principal for such training. To be an approved instructor for human sexuality, a teacher will be required to complete the District directed in-service training." [Ex. 20.].

105.121.   Plaintiffs have no evidence that any of their children's teachers were approved instructors for human sexuality as of November 2018.

106.122.   Notably, Ex. 14 suggests that sexuality education is not available to students below 5th grade. However, Ex. 12 makes clear that parents have the right to exclude their children from health education, including sex education, beginning with their kindergarteners.

107.123.   BVSD provided an opt-out form for "Raven's True Self." ExExs. 8, Ex. 17.

108.124.   Nevertheless, BVSD, in spite of its policies (including those indicating governance by Colorado law) and in spite of having effectively admitted that transgender programming constitutes sexuality education by providing the opt-out form for the performance

of "Raven's True Self", BVSD has repeatedly denied that gender and transgender issues are properly a part of its sex ed. curricula and that such curricula can be opted out of. [Ex. 1, Ex. 2.].

**BVSD has a *practice* of religious discrimination ~~against Plaintiffs~~that was revealed in handling the ~~dispute and~~ Plaintiffs' formal complaints and which harmed Plaintiffs.**

~~109.~~125.    Plaintiffs are deeply religious, and they conduct themselves according to their religious beliefs.

~~110.~~126.    Among Plaintiffs' religious beliefs is that all people should be treated as having inestimable worth because they are created in the image and likeness of a loving God who sent His only Son to die for the sins of all people, equally. This belief governs Plaintiffs' interactions and demands that everyone be treated with honor and respect.

127.    On paper, BVSD encourages the reporting of unlawful discrimination or harassment as defined in Board policy to immediately report it to an administrator, counselor, teacher or the district's compliance officer and file a complaint as set forth in BVSD Regulation AC-R. "No student shall be subject to adverse treatment in retaliation for any good faith report of discrimination or harassment." Ex. 12 at 16.

128.    But the reality is that that in numerous ways as detailed in this Amended Complaint, BVSD has a practice of discriminating against those with religious beliefs, including Plaintiffs.

~~111.~~129.    Bedford's November 16, 2018 email indicating a transgender performance and related videos to be shown in conjunction with said performance violated Plaintiff's religious freedom as recognized in the First Amendment of the United States Constitution because it ~~informed elementary school parents of sex ed. events for which there was~~provided no opt-out even though an opt-out was required. precisely because some hold religious beliefs that conflict with teachings of BVSD. Ex. 1, Ex. 2. Compare Ex. 13, 14.

112.130.    Plaintiffs, almost immediately upon learning of the planned "Queer KidKids Stuff" videos and the planned presentation of "Raven's True Self", emailed Bedford to voice their concerns. Ex. 19.

131.    On November 26, 2018, Bedford initially responded to Plaintiffs' initial email on the subject by stating that noshe had reviewed the material and determined its appropriateness. She also pointed to BVSD Guidelines Regarding Support of Students and Staff who are Transgender AC-E3. Ex. 22.

113.132.    Bedford later responded to emails that Plaintiffs sent to individual teachers explaining their religious choice to opt-_out of BVSD human sexuality and transgender programming at SES by emphatically stating that SES would not be allowed, but she able to accommodate Plaintiff parents' request to proactively opt their children out "from topics that might be offensive to Plaintiffs' religious beliefs." Ex. 2. Bedford later begrudgingly provided one fora Google link to an opt-out form [Ex. 8.] that was untimely and the form of which does not comply with BVSD written practices. Ex. 13 at pg. 4. However, the opt-out that Bedford offered applied only to the presentation of "Raven's True Self" but not forto the Queer Kids Stuff videos or planned classroom discussions. Ex. 8.

133.    BVSD Chief Communication Officer, Randy Barber explained, in part, "As a part of our commitment to diversity, BVSD has long allowed families to work with their schools and opt out of certain instructional events on a variety of topics. Instructional events are planned lessons, assemblies and/or guest speakers, with reference to content that families may wish to opt out of. It is not our expectation that families or students are able to opt out of spontaneous classroom discussions, including student expression or teachers responding to student questions.

Schools are expected to specifically communicate with families in advance about assemblies and guest speakers." Ex. 10.

114.134.    This approach is deceptive in that it purports to offer an opt-out unless something spontaneous occurs in the classroom, but what it really does is make room fordesigned to facilitate unannounced classroom discussion of matters that are governed by BVSD health and sex ed. curricula. That is not "spontaneous," it does not comply with BVSD policies, and it is discriminatory to Plaintiffs.

115.135.    District Policies AC (Nondiscrimination/Equal Opportunity) 10/23/12, JB (Equal Educational Opportunities) 01/22/19, and JBB (Sexual Harassment), 10/23/12 provide that all members of the school community are treated with dignity and respect and that no student shall be subjected to discrimination or harassment under any district program or activity on the basis of, among others, religion. Ex. 12 at 16.

116.    The Board of Education is committed to providing a safe learning and work environment where all members of the school community are treated with dignity and respect. No otherwise qualified student shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination or harassment under any district program or activity on the basis of disability, race, creed, color, sex (which includes marital status), sexual orientation, gender identity/expression, national origin, religion, ancestry, need for special education services or physical characteristics.

117.    Any student who believes he or she has been a victim of unlawful discrimination or harassment as defined in Board policy, or who has witnessed such unlawful discrimination or harassment, is encouraged to immediately report it to an administrator,

**Formatted:** Justified, Indent: Left: 0", First line: 0.5"

~~counselor, teacher or the district's compliance officer and file a complaint as set forth in BVSD Regulation AC-R.~~

~~118.    "[n]o student shall be subject to adverse treatment in retaliation for any good faith report of discrimination or harassment." *Id.*~~

136.   BVSD policies and practices in this area differ substantially in ways that are discriminatory to Plaintiffs.

**BVSD engaged in religious discrimination by presenting sex ed. materials to K-5[th] students, engaging in educational partnerships, and avoiding its own written policies in ways that harmed Plaintiffs because of Plaintiffs' religious beliefs.**

~~119.~~137.    BVSD policy provides for "resource personnel" to oversee the sex ed. curriculum. Policy IGAI-R, "Resource personnel shall not advocate the use of specific community agencies nor special interest groups." ~~Ex. 20.~~ Presumably, this is so that special interest groups cannot commandeer BVSD sex ed. policy. Ex. 20.

~~120.~~138.    However, BVSD partners with, and even sponsors, the LGBTQIA+ special interest group, A Queer Endeavor ~~("AQE").~~. Ex. 21.

~~121.~~139.    ~~AQE~~A Queer Endeavor operates out of the School of Education at CU-Boulder. They focus on training teachers and teachers-to-be to "queer the classroom."

140.    The concept of "queering the classroom" is, by design, in direct opposition to the beliefs of religious persons like Plaintiffs.

~~122.~~141.    BVSD has worked with ~~AQE~~A Queer Endeavor since about 2013. According to the CU Boulder website, as of November 23, 2015, ~~AQE~~A Queer Endeavor had visited 11 BVSD schools and, in the fall of that year, provided three professional development sessions (2.5 hours each) with all Boulder Valley School District principals. ~~AQE~~A Queer

Endeavor was contracted to provide a three-part Teacher Institute Series offered to all BVSD teachers during the 2015-2016 school year. Ex. 21.

142. As indicated above, BVSD policies do not provide for the presentation of human sexuality material to children below the fifth grade. Plaintiffs pointed out BVSD's error in failing to consider transgender programming as human sexuality material and even went so far as to offer to help remove ongoing religious discrimination from the school system. Ex. 24.

143. BVSD Communication Director, Randy Barber, issued a March 20, 2019 email with broad distribution that alleges, among other things, that "[BVSD's] practice is to allow families to opt out of this material…." However, that is the official policy—not the practice as BVSD representatives made clear by their many acts which were in conflict with that assertion. Ex. 27.

**RETALIATION**

**BVSD engaged in discriminatory retaliation based on the basis of PlaintiffsPlaintiffs' sincerely held religious beliefs by disclosing sensitive student information in violation of FERPA and District Policies and by refusing to fully address Plaintiffs' complaint and supplemental complaint.**

123. BVSD policy is that AC-E2 complaints are to remain confidential.

124. Plaintiffs' AC-E2 complaint contained information about Plaintiff minor students.

144. Bedford retaliated against Plaintiffs by revising what was to be a one-day special event on transgenderism for the kindergarten through fifth grade students to a two-day program. This adversely affected Plaintiffs, as was its design, because they then had to keep their students out of school for two days. Exs. 1, 17.

125.145.      BVSD handbook provides that "[t]he staff and administrators of BVSD

safeguard the educational records of students in accordance with the requirements of federal and

state laws, and consistent with district policy." [Ex. 12 at 13, 14.].

146.    However, afterBVSD policy is that AC-E2 complaints and student records are to

remain confidential.

147.    Plaintiffs' AC-E2 discrimination complaint contained information about Plaintiff

minor students. Ex. 4.

126.148.      On April 22, 2019 the Boulder Daily Camera published a storythe first of

two articles and one "Staff Editorial" about the parent concerns regarding the transgender

programming at SES and . Aside from its inaccuracies, the April 22, 2019 article included

confidential information that Plaintiffs had shared only in their AC-E2 discrimination complaint

[Ex. 4] and which could allow readers to connect the information to Plaintiffs, including Plaintiff

minors. The information was published the night before the BVSD board of education meeting

where the board was to decide whether to hear Plaintiffs' KE appeal. Plaintiff parents spoke with

the journalist who published the storystories and learned that Randy Barber, BVSD's Chief

Communication Officer had simply provided a copy of Plaintiffs' confidential AC-E2 complaint

to her without so much as an open records request. The confidential discrimination complaint

documents were part of the minor plaintiffs' private student records. BVSD leaked them to retaliate

and negatively affect the outcome of Plaintiffs' administrative (KE) appeal. Ex. 10.

127.149.      BVSD policy states that "[n]o student shall be subject to adverse treatment

in retaliation for any good faith report of discrimination or harassment." Ex. 12.

128.150.      Yet, the climate at SES became decidedly caustic for the families who

opposed BVSD's transgender curricular endeavors.

**Formatted:** Justified, Indent: Left: 0", First line: 0.5"

**Formatted:** Justified, Indent: Left: 0", First line: 0.5"

~~129.~~151. BVSD teachers were overheard at school openly maligning the families who complained about the SES transgender materials in November 2018.

~~130.~~152. BVSD teachers and community members posted hostile messages online, including on the BVSD ~~safe schools~~"Safe Schools" facebook page. What gets posted online can get back to children and harm them. That the lack of acceptance can be damaging to young people is a central concept forwarded by BVSD and ~~AQE.~~A Queer Endeavor. Yet, BVSD did not hesitate to retaliate against Plaintiffs when given the opportunity to do so.

~~131.~~153. On April 22, 2019, the BVSD Safe Schools Initiative even posted a message on its facebook page pointedly calling for LGBTQ supporters to show up at the school board meeting the following night to oppose Plaintiffs, who it acknowledged had filed a religious discrimination complaint against BVSD. The post mischaracterized Plaintiffs' complaint as anti-LGBTQIA+ students and falsely stated that Plaintiffs had ~~leveled an attack on~~attacked them. It is ~~quite possible~~likely that the ~~story in the~~ Boulder Daily Camera story that stemmed from Randy Barber's providing of Plaintiffs' confidential AC-E2 Complaint is what inflamed the person who posted this on the BVSD SSI facebook page. Ex. 23.

~~132.~~154. As if the retaliation of releasing personal, confidential information and stirring up a crowd to oppose Plaintiffs at a school board meeting was not enough, Rob Anderson and Robbyn Fernandez still refused to answer Plaintiffs' complaint in a timely way and refused to answer certain issues raised. In fact, Rob Anderson, the BVSD superintendent and the compliance officer, failed to answer the central issues raised in the discrimination complaint. ~~This could not have been an accident~~Ex. 3.

~~133.~~155. Plaintiffs, in vain, made numerous requests for timely and complete responses to their religious discrimination complaint. Ex. 3. 11.

30

134.156.    BVSD appears to have realized that Plaintiffs were right about their concerns and decided to play games with Plaintiffs rather than respond substantively and meaningfully to their requests and concerns set forth in their discrimination complaint.

135.157.    Throughout their initial emails and in their complaint and supplemental complaint, Plaintiffs repeatedly indicate that their complaints are based on their religious freedom and their faith. Still, Superintendent, Rob Anderson and Assistant Superintendent, Robbyn Fernandez state in emails that Plaintiffs complaints are not about religious discrimination. Ex. 6, Ex. 11, Ex. 25.

158.    At the April 23, 2019 board meeting, BVSD allowed Plaintiffs to repeatedly be called hateful, homophobic, transphobic, and to be booed for their Plaintiffs' religious beliefs.

136.159.    Because of thetheir great mistreatment and systematic alienation of Plaintiffs by BVSD, Plaintiffs cannot return to Boulder Valley Schools.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Violation of First Amendment Freedom of Religion**

137.160.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

138.161.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

139.162.    Plaintiffs have sincerely held religious beliefs that govern their conduct and views.

140.163.    PlaintiffsPlaintiffs' religious views are sincerely held and do not inhibit the freedoms of others.

31

141.164.    TheBVSD's practice of Defendant BVSD of abandoning its written policies whenever it sees fit and with disregard, if not in view of to Plaintiffs' religious beliefs violates Plaintiffs' First Amend right to practice their religion and to be free from government impingement of their religion.

142.165.    Defendant BVSD'sBVSD maintains unwritten practices of abandoning its written policies at its own convenience do not constitute neutral lawsand at the expense of general applicability. Rather, they are decidedly non-neutral, clearly favoring those with a particular view of sexuality and gender and decidedly disfavoring Plaintiffs and their rights.

143.166.    BVSD lacks a compelling, legitimate, (or even rational) interest in its pattern of willfully ignoring its written policies which, presumably, exist to maintain the rule of law and of the civil rights of the families it exists to serve.

167.    That BVSD has written policies that conflict with its practices shows its lack of a compelling interest in treating Plaintiffs the way that it has.

144.168.    The BVSD practice of abandoning its official policies burdens Plaintiffs' sincerely held religious beliefs while at the same time setting up a pervasive system of individualized preference for those who do not hold religious views similar to those of Plaintiffs.

145.169.    BVSD's actions in this regard have caused, are causing, and will continue to cause Plaintiffs financial hardship as Plaintiffs have had to pull their children out of BVSD and engage in a combination of home educating and private schooling at great personal financial expense, the amount of which will be proved at trial.

146.170.    Plaintiffs pray for relief against BVSD as hereinafter set forth in their prayer for relief.

## SECOND CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Violation of Fourteenth Amendment Right to Direct the Care and Upbringing of Children**

147.171.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

148.172.    BVSD's pattern and practice of avoiding compliance with its written policies deprived Plaintiff parents of their right to the care, control, and upbringing of their children as recognized by court decisions pursuant to the First and Fourteenth Amendments of the U.S. Constitution.

149.173.    The denial of a parent's ability to make fundamental decisions regarding her child's education rises to the level of a constitutional violation.[5]

150.174.    The Due Process Clause of the Fourteenth Amendment guarantees heightened protection against government interference with certain fundamental rights and liberty interests, including the right of parents to direct their children's upbringing.

151.175.    Defendant BVSD interfered directly with Plaintiff parents' rights in this regard and then refused to remedy the interference in the course of the administrative remedy process in which Plaintiffs, but not Defendant BVSD, engaged fully.

152.176.    BVSD's actions in this regard caused Plaintiffs emotional difficulty and financial hardship during and after the period of the 2018-2019 school year as Plaintiff parents had to pull their children out of BVSD schools and engage in a combination of home educating and private schooling at great personal financial expense, the amount of which will be proved at trial.

---

[5] *See Meadows v. Lake Travis Indep. Sch. Dist.*, 397 Fed.Appx. 1, 3 (5th Cir.2010) (unpublished) (per curiam), quoted in Doe v. Dallas Indep. Sch. Dist., 194 F. Supp. 3d 551, 561 (N.D. Tex. 2016).

153.177.    Plaintiff children, meanwhile, suffer greatly because of this deprivation and have lost countless friends in the process.

154.178.    Plaintiffs pray for relief against BVSD as hereinafter set forth in their prayer for relief.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Violation of Fourteenth Amendment Equal Protection**

155.179.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

156.    The BVSD transgender programming and curricula deny equal protection to parents who, for religious or other reasons, wish to exclude their children from the teachings.

180.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

157.181.    Equal Protection Doctrine requires that similarly situated persons be treated similarly.   However,   religious   Boulder Valley Schools   parents   in the District   who wish, for religious reasons, to exclude their children from the problematic programming are not treated like non-religious parents.

158.

182.    Plaintiffs were similarly situated to other Boulder Valley Schools parents in that they had the right, and may have chosen, because of religious or for other reasons, to exclude their children from certain programming.  The BVSD transgender programming and curricula, and the way that they are carried out, deny equal protection to Plaintiff (and other) parents who, for religious or other reasons, wish to exclude their children from the teachings.

159.1.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

34

160.183.    BVSD has abused its policies, and thereby Plaintiffs, through a systematic mechanism by which it favors some parents because of their beliefs while disfavoring others because of their beliefs.

161.184.    BVSD's actions in this regard have caused Plaintiffs emotional difficulty, physical difficulty, health difficulty, and financial hardship during and after the period of the 2018-2019 school year as Plaintiff parents had to pull their children out of BVSD schools and engage in a combination of home educating and private schooling at great personal financial expense and great health expense, the amount of which will be proved at trial.

162.185.    Plaintiff children, meanwhile, suffer greatly because of this deprivation and have lost countless friends in the process.

163.186.    Plaintiffs pray for relief against BVSD as hereinafter set forth in their prayer for relief.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Retaliation in Violation of Religious Liberty**

164.187.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

165.188.    By filing a formal complaint in close adherence to BVSD policies and procedures, Plaintiffs were engaged in free speech and petitioning the government for a redress of grievances. Plaintiffs' activities in this regard are constitutionally protected.

166.189.    BVSD's adverse action in violating Plantiffs' rights under the United States Constitution and BVSD policies regarding the AC-E2 complaint process and the KE appeal process caused Plaintiffs to suffer injuries. It that would likely chill a person of ordinary firmness from continuing to engage in the activity of filing what is supposed to be a confidential complaint regarding discrimination where personal information about parents and their children, as well as

sensitive subject matter, is shared. BVSD's practices and actions whereby it disregarded Plaintiffs' rights, as well as its own stated policies, caused Plaintiffs relational difficulties and difficulties navigating what is otherwise a straightforward complaint process.

167.190.   Plaintiffs had to repeatedly ask for responses to their complaints, and they never got those responses. This was a not-so-subtle demonstration of utter disregard for Plaintiffs' rights.

168.191.   BVSD's actions in this regard were intended and carried out in retaliation against Plaintiffs, whom it wrongly regards as hateful, uncaring, and anti- certain students.

169.192.   BVSD's actions resulted in Plaintiff children being pulled out ofhaving to flee their neighborhood school and school district, and it caused them to permanently and losinglose many valued relationships both towith students and teachers.

170.193.   Plaintiffs pray for relief against BVSD as hereinafter set forth in their prayer for relief.

**PRAYER FOR RELIEF**

171.194.   Plaintiffs pray for monetary damages in compensation for the expenses incurred in home educating their children up to a certain grade level and private educating their children after that grade level through high school, all of whom would attend BVSD schools were it not for BVSD's actions in violation of their constitutional rights. These damages are both retrospective and prospective.

172.195.   Plaintiffs pray for attorney fees and costs as set forth in 42 U.S.C. §1988, and for such other and further relief that the Court deems just and proper.

[Attorney listed on following page.]

36

Respectfully submitted this 31st day of December, 2020.

ILLUMINE LEGAL, LLC
/s/ J. Brad Bergford
J. Brad Bergford, CO Bar no. 42942
Attorney at Law
7887 E. Belleview Avenue, Suite 1100
Denver, CO 80111
Phone: 303.228.2241
Email: brad@lawillumine.com
Attorney for Plaintiffs


**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System. The Defendant's documents are being served via email per the Defendant's counsel's agreement to waive formal service.

/s/ Michelle L. McMacken
Michelle McMacken