UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03399-RM-NRN

**LEWIS JONES**; and **BRECKEN JONES**; and **KJ**, a Minor,
BY AND THROUGH PARENTS LEWIS AND BRECKEN JONES
AS NEXT FRIENDS; and **RJ**, a Minor, BY AND THROUGH
PARENTS LEWIS AND BRECKEN JONES AS NEXT FRIENDS;
and **NJ**, a Minor, BY AND THROUGH PARENTS LEWIS AND
BRECKEN JONES AS NEXT FRIENDS; and

Plaintiffs**,**

v.

**BOULDER VALLEY SCHOOL DISTRICT RE-2**, Boulder, Colorado;

Defendant.

---

**SCHOOL DISTRICT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

---

Plaintiffs' supplemental brief (ECF 68) does not adequately address the School District's futility argument and appears, oddly, to be a framed as a response to the District's dismissal motion, which Plaintiffs opted not to file when they moved to amend their complaint (ECF 57).

Plaintiffs argue that emails between and among District staff and Plaintiffs in Fall 2018 evidence municipal liability under *Monell*. (ECF 68 at 1-4.) Plaintiffs point to allegations in paragraphs 13-16, 20, 24, 27, 29, 30, 31, and 40-42 in support of this argument. (*Id.* at 3.) In its dismissal motion, the District explained why these allegations, and documents cited in those allegations, do not plausibly allege municipal liability. (ECF 33 at 9-13.) Plaintiffs added paragraphs 41 and 42 in the proposed Second Amended Complaint. (ECF 57-2 at 8, ¶¶ 41-42.)

But, as the District noted in its response in opposition to the motion to amend, these newer allegations do nothing but elaborate on Plaintiffs' interpretation of the same emails they addressed in the proceeding paragraphs and add conclusory statements, none of which makes municipal liability more plausible. (ECF 63 at 17; *see also* ECF 57-2 at 8, ¶¶ 41-42.)

Plaintiffs argue that allegations concerning the third-party video from March 2021 plausibly allege municipal liability. (ECF 68 at 4-7.) Plaintiffs dedicate much of this argument to summarizing or paraphrasing from the video (*id.*), which the Court can view for itself. (ECF 59.) As explained in the District's opposition to the motion to amend, this video—occurring years after the events underlying Plaintiffs' claims, at another school, involving different staff—does not show a pattern or practice of the type of misconduct that Plaintiffs allege. (ECF 63 at 11-15.) All it shows is two staff members explaining to a parent why that school facilitated a 20-minute lesson promoting inclusivity. (*Id.*) Further, while Plaintiffs assert that the video shows a practice of "denying" opt-outs for parents, the principal in the video repeatedly stated that she would allow opt-outs if requested (ECF 63 at 12-14), and there is no dispute that Plaintiffs were notified in advance and were allowed to opt out of the instructional events they found offensive (namely, the Raven's True Self performance and related YouTube videos). (ECF 33 at 2-5, 13-14).[1]

Plaintiffs highlight every perceived slight asserted in their complaint as evidence that they have plausibly alleged a pattern and practice of religious discrimination. (ECF 68 at 7-8.) This argument misses the point. To prove municipal liability, Plaintiffs must do more than allege isolated incidents of discrimination that only apply to them. *Nielander v. Bd. of Cnty. Comm'rs of*

---

[1] As noted in the response in opposition to the amended complaint, the video does nothing to make Plaintiffs' underlying constitutional claims more plausible, as the events in the video do not involve Plaintiffs. (ECF 63 at 13-15.)

*Cnty. of Republic, Kan.*, 582 F.3d 1155, 1170 (10th Cir. 2009). They must allege "longstanding" practices that are "so permanent and well-settled as to constitute a custom or usage with the force of law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *Murphy v. City of Tulsa*, 950 F.3d 641, 649 (10th Cir. 2019). They have not met this bar. While Plaintiffs cite several dozen allegations, those allegations largely relate to the same core instance of asserted discrimination that District staff refused to proactively opt the minor Plaintiffs out of all transgender programming. Plaintiffs may believe that this amounts to discrimination, but that single act, which applies only to them, is far from a longstanding or well-settled custom. Other allegations assert that the District partners with organizations that promote equity-centered programming. (E.g., 167-76.) That partnership is not evidence of a longstanding practice of discrimination, and Plaintiffs have failed to sufficiently allege that they personally were impacted by this programming. (ECF 33 at 15 and 63 at 15-16.) Plaintiffs also assert instances of alleged retaliation for filing their claim of religious discrimination. (ECF 57-2 ¶¶ 177-97.) But those instances relate only to them, not anyone else. *See Bradley v. D.C. Pub. Schs.*, 87 F. Supp. 3d 156, 161-62 (D.D.C. 2015) (no municipal liability where plaintiff failed to allege that school district "violated anyone's rights other than her own"). And, as the Tenth Circuit has concluded, multiple instances of alleged retaliation against a plaintiff is not enough to establish a longstanding and well-settled custom. *Mitchell v. City and Cnty. of Denver*, 112 Fed. App'x 662, 671-72 (10th Cir. 2004).

Plaintiffs concede that in Colorado a final school district policymaker is the board of education or those delegated specific powers from the board. (ECF 68 at 8-9.) They list a "slew" of staff whom they assert have confirmed that the "district" is the "responsible party" for their actions, but they do not explain why the actions of these staff members must necessarily be

imputed to the District, or identify how or when these staff members have been delegated final policymaking authority from the board, let alone cite to any relevant allegations or authority to support such a theory. (*Id.*) Plaintiffs have not plausibly alleged that a final policymaker violated their constitutional rights. (ECF 33 at 11-13 and 63 at 14.)

In support of their Free Exercise claim, Plaintiff assert, contrary to their own allegations and documents cited in those allegations, that the District did not timely allow them to opt out of the instructional events they found concerning. (ECF 68 at 9-10.) This bears repeating: Plaintiffs were provided an opt-out form and opted their children out of the Raven's True Self performance and the related instructional videos before those instructional events occurred. (ECF 33 at 3-5.) Not only that, aside from day-to-day discussions that may arise organically in the classroom, Plaintiffs (or anyone else) would be alerted of any instruction about gender identity, given the opportunity to opt out, and have the option of alternative activities. (ECF 33 at 14.) Plaintiffs continue to vaguely assert that the District has engaged in some vast and secret conspiracy to weave transgender programming into its curriculum (ECF 68 at 9), but they do not plausibly allege any specific instance where that is true or that Plaintiffs were impacted by any such programming. (ECF 33 at 15, ECF 63 at 15-16.) Plaintiffs even cite to alleged instances of retaliation in support of their Free Exercise claim (ECF 68 at 9-10), an illogical cross-reference that is not alleged in the operative or proposed complaint and does not, in any event, support the theory that they were coerced to participate in programming offensive to their religious beliefs.

Regarding their due process claim, Plaintiffs assert, rather brazenly, that the District "proudly denied Plaintiffs the right to bring up their children and to worship God according to the dictates of their own consciences." (ECF 68 at 11.) Plaintiffs have not plausibly alleged that the

4

District did any of these things, nor do they point to any allegations supporting such an assertion. (*Id.*) Plaintiffs allege that the District refused to allow the minor Plaintiffs to opt out of transgender programming offensive to their religious beliefs. Even accepting those allegations as true for purposes of the dismissal motion, Plaintiffs have no due process right to exempt their children from educational programming they find objectionable. *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699 (10th Cir. 1998). Plaintiffs do not contest this point in their brief (ECF 68 at 11), nor could they. Thus, their due process claim is not plausible on its face.

Plaintiffs offer no legitimate argument against dismissing their Equal Protection claim, choosing instead to lodge baseless attacks against the District (e.g., the District believes it is "above the law") and distorting its arguments in favor of dismissal (e.g., the District's defense is that it denied everyone an opt-out). (ECF 68 at 11-12.) Plaintiffs also strangely, without any apparent relevance, assert that only "religious" parents would desire to opt their children out of certain programming (*id.* at 12), failing to consider that, under District policy (quoted in Plaintiffs' own emails), any parent, whether they are religious or not, may opt their children out of programming that is contrary to their closely held personal beliefs. (ECF 13-7 at 1.)

Regarding the retaliation claim, Plaintiffs focus their brief on the allegation that the District provided a "confidential" copy of their discrimination complaint to a newspaper reporter. (ECF 68 at 12-14.)[2] Based on the documents that Plaintiffs attach to their brief, the District's Chief Communications Officer, Randy Barber, evidently took the care to redact their complaint (and

---

[2] As noted in the dismissal motion and response in opposition to the amended complaint, Plaintiffs have asserted several instances of retaliation, including that the District expanded the "transgender programming" from one day to two and were dilatory and incomplete in responding to their discrimination complaint. For the reasons set forth in those motions, Plaintiffs fail to plausibly allege First Amendment retaliation. (ECF 33 at 19-22 and 63 at 16-18.)

supplemental complaint) before sending to the reporter, who "wasn't very interested in the complaint that much" anyway. (ECF 68-2.) Plaintiffs emphasize that they wanted their "privacy respected" related to their complaint, and yet they spoke publicly in favor of their complaint at a public meeting of the BVSD Board of Education. (ECF 33 at 21-22.) As explained in the dismissal motion, Plaintiffs' complaints of discrimination, filed with the School District, are not students records subject to protection under FERPA. (ECF 33 at 22.) And the same newspaper reporter to whom Mr. Barber gave the redacted complaints could instead have requested and obtained the same redacted version of the complaints, which are public records kept by the District, through an open records request under the Colorado Open Records Act, C.R.S. §§ 24-72-203, 204 (2021).

For these reasons, and as more fully stated in the District's dismissal motion and response in opposition to the motion to amend the complaint, Plaintiffs fail to plausibly allege any basis for relief and their claims, therefore, should be dismissed with prejudice.

Respectfully submitted this 12th day of August 2021.

        **CAPLAN AND EARNEST LLC**

        <u>s/Elliott V. Hood</u>
        Michael W. Schreiner
        Elliott V. Hood
        3107 Iris Avenue, Suite 100
        Boulder, CO 80301
        Phone: (303) 443-8010
        mschreiner@celaw.com
        ehood@celaw.com

        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

  This is to certify that on the August 12, 2021, a true and correct copy of the foregoing was filed with the US District Court of Colorado CM/ECF System which will notify the following:

J. Brad Bergford, Esq.
Illumine Legal, LLC
7887 E. Belleview Avenue, Suite 1100
Denver, CO 80111
Email: brad@lawillumine.com
*Attorneys for Plaintiff*           s/*Shellie Satterfield*
                  Shellie Satterfield, Paralegal